Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 1 of 16. PageID #: 928

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  FOR THE NORTHERN DISTRICT OF OHIO
3  EASTERN DIVISION
4  MICHAEL GRAHAM,
5      Plaintiff,
6      vs.                Case No. 1:06-CV-1532
7  BEST BUY STORES,
8  L.P., et al.,
9      Defendants.
10     - - - - -
11     Deposition of STACEY VYAS, a Witness
12 called by the Plaintiff for examination under
13 the Applicable Rules of Federal Civil Procedure,
14 taken before me, Cynthia A. Sullivan, a
15 Registered Professional Reporter and Notary
16 Public in and for the State of Ohio, pursuant to
17 notice and stipulations of counsel at the
18 offices of Schuster & Simmons, The Bevelin
19 House, 2913 Clinton Avenue, Cleveland, Ohio, on
20 Friday, March 9, 2007, at 9:00 a.m.
21     - - - - -
22
23
24     EXHIBIT D
25

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 2 of 16. PageID #: 929
STACEY VYAS                                                    March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 2

```
 1   APPEARANCES:
 2   On behalf of the Plaintiff:
 3         Schuster & Simmons Co., L.P.A., by
 4         KAMI D. ROWLES, ESQ.
 5         The Bevelin House
 6         2913 Clinton Avenue
 7         Cleveland, Ohio  44113
 8         (216) 348-1100
 9
10   On behalf of the Defendants
11         Vorys, Sater, Seymour and Pease, LLP, by
12         DAVID A CAMPBELL, ESQ.
13         MATTHEW D. BESSER, ESQ.
14         2100 One Cleveland Center
15         1375 East Ninth Street
16         Cleveland, Ohio  44114
17         (216) 479-6100
18
19                      ----
20   ALSO PRESENT:
21         Denise Meyer
22                      ----
23
24
25
```

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 3 of 16. PageID #: 930

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 3

1  STACEY VYAS, of lawful age, called for
2  examination, as provided by the Federal Rules of
3  Civil Procedure, being by me first duly sworn,
4  as hereinafter certified, deposed and said as
5  follows:
6  EXAMINATION OF STACEY VYAS
7  BY MS. ROWLES:
8  Q. Can you give your full name for the
9  record, please.
10  A. Stacey Lynn Vyas.
11  Q. Can you spell your last name for the
12  record.
13  A. V-Y-A-S.
14  Q. Have you ever been deposed before?
15  A. No.
16  Q. Have you ever been a party to a
17  lawsuit?
18  A. No.
19  Q. We'll just then go over some ground
20  rules for depositions. If I ask a question and
21  you don't hear or understand me, just let me
22  know, and I'll rephrase it or reask it. If you
23  answer a question, I'll assume that you've heard
24  it and understood the question; okay?
25  A. Okay.

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 4 of 16. PageID #: 931

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 28

1       Q.    When you say on line, is that the
2  employee tool kit?
3       A.    It's called EGO. I don't know if it
4  was EGO at that point, but whatever the
5  employees accessed. It had to be under employee
6  tool kit.
7       Q.    Have you heard of the term open box?
8       A.    Yes.
9       Q.    What does open box refer to?
10      A.    A unit that has been returned or
11  displayed, for some reason taken out of the box,
12  and it's not new or like new.
13      Q.    Is that term used for any
14  merchandise in the Best Buy store that's taken
15  out of the box or packaging?
16      A.    Yes.
17      Q.    An open box item, if that would be
18  sold to the public, would it be sold at a
19  discount price?
20      A.    Typically, yes.
21      Q.    How would an employee discount be
22  applied to an open box item?
23      A.    The employee discount was whatever
24  was less for the employee. So if it's an open
25  box item and the cost is reduced, the price is

```
 1    reduced by 10 percent and that's cheaper than
 2    the employee discount, then they will get the
 3    cheaper of the two prices.
 4         Q.    Okay.  What about the term closeout,
 5    what does that mean?
 6         A.    Closeout is products that are older,
 7    that we won't be carrying that model possibly
 8    anymore, so they go to closeout, and once we
 9    sell out of them, we don't get any more of them.
10         Q.    Any closeout items, would those be
11    sold to the public at a discount?
12         A.    Yes.  They go -- they reduce the
13    price.  I don't know what the process is, but
14    they continue to reduce the prices on them until
15    we sell out of them.
16         Q.    How would the employee discount be
17    applied to a closeout item?
18         A.    The same as an open item.  So if the
19    employee discount was cheaper, they would get
20    the cheaper of the two prices.
21         Q.    What about the term discontinued, is
22    that different from closeout?
23         A.    No.
24         Q.    So discontinued and closeout are
25    synonymous in Best Buy land?
```

Case: 1:06-cv-01532-SL  Doc #: 45-5  Filed: 07/26/07  6 of 16.  PageID #: 933

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 32

1   pointed line, it says 30 percent off any
2   closeout or open box desktop, notebook, monitor,
3   or projector, and you can see it's for a limited
4   time, April 17th through 30th.  Did employees
5   get a greater percentage off than their general
6   employee discount at certain times?
7          A.     On occasion.  It was very few and
8   far between.
9          Q.     So this would be like a special?
10         A.     This is an additional, yeah.  This
11  is an additional discount that was given.
12         Q.     This 30 percent off, would that be
13  in addition to an employee's regular discount
14  plus an extra 30 percent off or just a total of
15  30?
16         A.     It would be a total of 30.
17         Q.     On the second bulleted line it says,
18  have your manager approve the price on the open
19  box item.  When you talk about the price, what
20  price are we talking about?
21         A.     I can assume they were referring to
22  the discounted price.
23         Q.     Well, don't assume.  Do you know if
24  it was the discounted price?
25         A.     I don't know.

Case: 1:06-cv-01532-SL  Doc #: 45-5  Filed: 07/26/07  7 of 16.  PageID #: 934

**STACEY VYAS**  **March 9, 2007**
Graham v. Best Buy Stores, L.P., et al.

Page 33

```
 1        Q.    So if an employee wanted to buy an
 2   open box desktop computer, they would take --
 3   what would be the starting price, would it be
 4   the discounted price for the public or the
 5   retail price?
 6              MR. CAMPBELL:  If you know.
 7        Q.    Before the 30 percent was taken off.
 8        A.    I don't know.
 9        Q.    You don't know?
10        A.    I don't know.
11        Q.    Well, the third bulleted line says,
12   discount must be taken manually after the
13   employee price is entered.  What would be the
14   employee price?
15        A.    I don't know.
16        Q.    What do they mean by tracking UPC?
17        A.    I believe this UPC here, it has a
18   tracking number when you scan it.
19              MR. CAMPBELL:  She's pointing to the
20   right on Exhibit B, the UPC code.
21              MS. ROWLES:  Okay.
22        Q.    Who would know the details about the
23   price, that the manager has to approve an
24   employee price, if you don't know?
25        A.    I don't know.
```

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 8 of 16. PageID #: 935

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 34

```
 1        Q.    Down at the very bottom it says,
 2   employee purchase policy rules apply for this
 3   offer.  What is being referred to here as the
 4   employee purchase policy rules?
 5        A.    I don't know.  I could assume that
 6   it's who is eligible, but I don't know for sure.
 7        Q.    Well, I guess I'm confused.  If
 8   someone had a question, if an employee had a
 9   question about this discount for them, this
10   30 percent off, who would they ask?
11        A.    Their manager.
12        Q.    So their manager would know what was
13   meant by the price they had to approve in the
14   employee price and where the employee purchase
15   policy rules are?
16        A.    This looks like an accommodation
17   that was outside of the normal guidelines, so I
18   would assume they would go to their manager.  I
19   don't know where their manager would have went
20   at that point.
21        Q.    Why do you say it was outside the
22   normal guidelines?
23        A.    It's not something that we do on a
24   normal basis.
25        Q.    Best Buy as a whole as corporate
```

Case: 1:06-cv-01532-SL  Doc #: 45-5  Filed: 07/26/07  9 of 16.  PageID #: 936

STACEY VYAS                                              March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 35

```
 1    policy?
 2         A.    Yes.  I would refer to my district.
 3    I don't know what happens outside of my
 4    district.
 5         Q.    This is outside what happens in the
 6    norm in your district?
 7         A.    Yes.
 8         Q.    Why is it outside the norm?
 9         A.    It's above what a discount would be
10    for an employee.
11         Q.    Who would have decided to do this
12    30 percent off special?
13         A.    I don't know who decided on this.
14         Q.    What would be normal, I guess,
15    because you're saying this is not generally
16    normal, what would be a normal employee
17    accommodation?
18         A.    The employee discount.
19         Q.    Just the general employee discount
20    they get?
21         A.    Right.
22         Q.    The fact that they are getting
23    greater than what they are generally entitled to
24    is not normal?
25         A.    Right.
```

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 10 of 16. PageID #: 937

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 36

1  Q. Would the general manager of a store
2  have the authority to do something like this?
3  A. You know, I would -- the general
4  manager would probably partner with their
5  district manager before they would make a
6  decision like that.
7  Q. In your district in 2004 and 2005,
8  have you seen accommodations like this before?
9  A. I've never seen one like this
10 before.
11 Q. Have you seen other ones?
12 A. I've seen accommodations from
13 vendors.
14 Q. Okay. What are those?
15 A. Different vendors that work with
16 Best Buy like companies like Bose, satellite
17 radio companies, XM Radio, Sirius Radio, they
18 will provide accommodations for employees that
19 work for Best Buy.
20 Q. Any other types of accommodations?
21 A. Not that I can remember.
22 Q. The Best Buy policies on employee
23 accommodations, is that written down anywhere?
24 A. I don't know.
25 Q. Accommodations by vendors, would

Case: 1:06-cv-01532-SL  Doc #: 45-5  Filed: 07/26/07  11 of 16.  PageID #: 938

STACEY VYAS                                            March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 77

1   refresh your recollection as to when you first
2   learned about the theft?
3        A.    Could you say that again?
4        Q.    Sure.  That was a bad question.
5   Well, I'm just going to represent to you that
6   the theft occurred on May 9th.
7        A.    Okay.
8        Q.    How did you learn about the theft?
9        A.    The loss prevention market manager,
10  Tim Collins, had told me about it.
11       Q.    Why did he tell you about it?
12       A.    I don't know.  I mean, I think he
13  knew that Michael was terminated.  I'm assuming
14  that's why he told me.
15       Q.    Did he call you on the phone?
16       A.    No.  I think I saw him in our
17  office.  He has an office right next to mine.
18       Q.    So you saw him in the office, and he
19  said what to you?
20       A.    I just remember him saying that
21  there was a theft that had occurred in two or
22  three of our stores right out of our registers
23  and that they had caught the individual on a
24  picture.  They had a picture.  I didn't see the
25  picture, but he said they had a picture, and

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 12 of 16. PageID #: 939

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 78

1   they thought it could have represented Michael
2   Graham, and they contacted the police. That's
3   really all the contact that I had with him.
4        Q.   When you say there was a theft in
5   two or three of their stores, what other stores?
6        A.   I remember Elyria being one of them,
7   and I don't remember the other two offhand.
8        Q.   Were they in your district?
9        A.   Yes. They were in the district.
10       Q.   Prior to this alleged theft at the
11  Elyria store, were there problems with theft in
12  your district at the time?
13       A.   Not that I recall.
14       Q.   So Tim Collins, did he mention
15  Michael Graham by name during this conversation?
16       A.   I believe he did, yes.
17       Q.   What did you say back to him after
18  he told you?
19       A.   I asked him if he had contacted the
20  Elyria police, and he said yeah. I just
21  remember him saying, yeah, they had already
22  contacted the police.
23       Q.   Did you ask him any other questions?
24       A.   No.
25       Q.   Did you make any other statements to

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 13 of 16. PageID #: 940

STACEY VYAS                                                March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 81

1     A.    Not that I remember.

2     Q.    Were you personally contacted with regard to Michael Graham's termination prior to his being terminated?

5     A.    You know, I don't remember.

6     Q.    If you were contacted with regard to the termination of Michael Graham, would you have memorialized that anywhere?

9     A.    Not that I know of, no.

- - - - -

(Thereupon, Plaintiff's Deposition Exhibit E was marked for purposes of identification.)

- - - - -

15    Q.    Look through that document, and let me know when you're done.

17    A.    Okay.

18    Q.    Can you identify it for me, please, Exhibit E?

20    A.    It's an e-mail from a Stephanie Whitney regarding a complaint from Michael Graham.

23    Q.    Who is Stephanie Whitney?

24    A.    She was -- I don't know what her title was. She was an administrative assistant

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 14 of 16. PageID #: 941

STACEY VYAS March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 93

1  Q. If you'll look in the first box, it
2  says final summary. The second sentence says,
3  after completing an investigation, Stacey found
4  that Michael was terminated for taking an open
5  item laptop and switching it with a display
6  laptop in order to receive a better price for
7  himself. What was your investigation?
8  A. I don't remember.
9  Q. You don't remember the investigation
10 that you did?
11 A. No.
12 Q. Do you remember would you have
13 documented what steps you took in the
14 investigation?
15 A. I don't know. I would think so. It
16 might have -- if it was just a phone
17 conversation that I had, I may not have. I may
18 have completed it at that time. I don't know.
19 Q. If there were other steps besides a
20 phone call that you could have documented, where
21 would you have documented that?
22 A. On this (indicating).
23 Q. Other than the one phone call we
24 talked about, do you remember doing anything
25 else with regards to investigating Mr. Graham's

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 15 of 16. PageID #: 942

STACEY VYAS  March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 94

1  termination?
2      A.    I do not.
3            - - - - -
4        (Thereupon, Plaintiff's Deposition
5         Exhibit H was marked for purposes
6                of identification.)
7            - - - - -
8      Q.    Read over that document, and let me
9  know when you're done.
10     A.    Okay.
11     Q.    Can you identify Exhibit H for me,
12 please?
13     A.    It's a performance counseling record
14 for Michael Graham.
15     Q.    If you look right underneath the
16 title of the form, the second sentence says, see
17 reverse for action step model.  What are they
18 referring to by the action step model?
19     A.    That there would be directions, if
20 you will, on the back of the performance record
21 to help the managers administer correctly.
22     Q.    But what would be the action steps?
23 I mean, what are those?
24     A.    I don't know what it said on the
25 back.

Case: 1:06-cv-01532-SL Doc #: 45-5 Filed: 07/26/07 16 of 16. PageID #: 943

STACEY VYAS March 9, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 162

1               CERTIFICATE

2

3    State of Ohio,      )

4                        ) SS:

5    County of Cuyahoga. )

6

7

8

9        I, Cynthia A. Sullivan, a Notary Public
     within and for the State of Ohio, duly
10   commissioned and qualified, do hereby certify
     that the within named STACEY VYAS was by me
11   first duly sworn to testify to the truth, the
     whole truth and nothing but the truth in the
12   cause aforesaid; that the testimony as above set
     forth was by me reduced to stenotypy, afterwards
13   transcribed, and that the foregoing is a true
     and correct transcription of the testimony.
14
         I do further certify that this deposition
15   was taken at the time and place specified and
     was completed without adjournment; that I am not
16   a relative or attorney for either party or
     otherwise interested in the event of this
17   action. I am not, nor is the court reporting
     firm with which I am affiliated, under a
18   contract as defined in Civil Rule 28(D).

19       IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my seal of office at Cleveland,
20   Ohio, on this 21st day of July 2007.

21

22       *Cynthia A. Sullivan* (signature)

23
         Cynthia A. Sullivan, Notary Public
24       Within and for the State of Ohio

25   My commission expires October 17, 2011.