TIMOTHY L. COLLINS                                    June 21, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF OHIO

3                    EASTERN DIVISION

4                    - - - - -

5    MICHAEL GRAHAM,

6          Plaintiff,

7          vs.                    Case No. 1:06-CV-1532

8    BEST BUY STORES,

9    L.P., et al.,

10         Defendants.

11                    - - - - -

12         Deposition of TIMOTHY L. COLLINS, a

13    Witness called by the Plaintiff for examination

14    under the Applicable Rules of Federal Civil

15    Procedure, taken before me, Cynthia A. Sullivan,

16    a Registered Professional Reporter and Notary

17    Public in and for the State of Ohio, pursuant to

18    notice and stipulations of counsel  at the

19    offices of Schuster & Simmons, The Bevelin

20    House, 2913 Clinton Avenue, Cleveland, Ohio, on

21    Thursday, June 21, 2007, at 10:15 a.m.

22                    - - - - -

23

24                 **EXHIBIT**

25                      E

**TIMOTHY L. COLLINS**                                    June 21, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 2

```
 1    APPEARANCES:

 2    On behalf of the Plaintiff:

 3         Schuster & Simmons Co., L.P.A., by

 4         NANCY C. SCHUSTER, ESQ.

 5         KAMI D. ROWLES, ESQ.

 6         The Bevelin House

 7         2913 Clinton Avenue

 8         Cleveland, Ohio  44113

 9         (216) 348-1100

10

11    On behalf of the Defendants

12         Vorys, Sater, Seymour and Pease, LLP, by

13         DAVID A CAMPBELL, ESQ.

14         MATTHEW D. BESSER, ESQ.

15         2100 One Cleveland Center

16         1375 East Ninth Street

17         Cleveland, Ohio  44114

18         (216) 479-6100

19

20                        ----

21

22

23

24

25
```

**TIMOTHY L. COLLINS**
Graham v. Best Buy Stores, L.P., et al.

**June 21, 2007**

Page 3

1           TIMOTHY L. COLLINS, of lawful age, called

2    for examination, as provided by the Federal

3    Rules of Civil Procedure, being by me first duly

4    sworn, as hereinafter certified, deposed and

5    said as follows:

6           EXAMINATION OF TIMOTHY L. COLLINS

7    BY MS. SCHUSTER:

8        Q.  This is the deposition of Timothy

9    Collins in the case of Graham versus Best Buy.

10    Mr. Collins, would you state your name, please,

11    and spell your last name.

12        A.  Timothy Collins, C-O-L-L-I-N-S.

13        Q.  Mr. Collins, what is your date of

14    birth?

15        A.  February 9th, 1962.

16        Q.  Which makes you?

17        A.  Too old; 35 -- I'm sorry, 45.

18        Q.  Have you ever been deposed before?

19        A.  No.

20        Q.  Have you ever testified?

21        A.  In a grand jury once.

22        Q.  Any other testimony?  Any civil case?

23        A.  Yes.

24        Q.  When was that?

25        A.  Three or four years ago on a credit

**TIMOTHY L. COLLINS**                                    June 21, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 114

```
 1    investigations?
 2         A.   Whenever a GM asked me to.  If they
 3    suspected something in their store, if they were
 4    uncomfortable doing it, they would ask me to
 5    help them.
 6         Q.   Approximately how often would that
 7    occur?
 8         A.   Once a month.
 9         Q.   Oh, really.  That often?
10         A.   Uh-huh.
11         Q.   Did you have more requests to
12    investigate from some stores than other stores?
13         A.   Not that I recall.
14         Q.   Did you keep a record of the
15    investigations you conducted?
16         A.   Depending on the investigation.
17    Typically, that's HR.
18         Q.   What do you mean?
19         A.   I would give information to the HR
20    team.
21         Q.   But I asked you did you keep a record.
22    Did you make a record?
23         A.   Yes.  I said I always made notes
24    whenever I did an investigation.
25         Q.   Did you always give those notes to HR?
```

**TIMOTHY L. COLLINS**
Graham v. Best Buy Stores, L.P., et al.

Page 173

```
 1          Q.  Why not go back to Elyria?

 2          A.  Chapel Hill is only 15 minutes away

 3     from the Macedonia store.

 4          Q.  Who drove?  Did you drive?

 5          A.  Yes.

 6          Q.  On the way to Chapel Hill, did you

 7     have any conversation?

 8          A.  I'm sure we had idle chatter.

 9          Q.  Did you have any conversation about

10     the events in issue?

11          A.  Yes.

12          Q.  Yes, you did?

13          A.  Yes.

14          Q.  What was that?

15          A.  I told him I was adding two and two

16     together when I watched the videotape, and I

17     thought it might be Michael based on the fact

18     that I had met him a couple times, based on the

19     fact that -- first I backed up and explained to

20     him here's what I'm looking at from an

21     investigative standpoint.

22               I have somebody that obviously knows

23     what the green light means.  That tells me --

24     it's that combined with somebody that opened a

25     drawer and looked like they had a key.  That
```

Page 174

1    tells me it's somebody internal that understands

2    our system and knows about it and had access to

3    the key.  That tells me it's either a current

4    employee or former employee, so I looked at

5    that.

6           Then I looked at the history of stores

7    that had been till tapped being Canton, Chapel

8    Hill, Parma, and finally Elyria, the one we have

9    on video.  I said I didn't think Michael had

10    ever worked at Canton, Chapel Hill, Parma or

11    Elyria.  So I'm putting two and two together

12    thinking, okay, here in my mind it's a

13    possibility being Michael because it's somebody

14    who knows how the register works, knows when

15    there's a green light, knows how to open the

16    drawer with the right key, and knows how to find

17    out which key it is.

18       Q.  You said all this to --

19          MR. CAMPBELL:  He's still answering.

20    You've cut him off.

21          MS. SCHUSTER:  I understand that you

22    guys had a conversation out on the porch.

23          MR. CAMPBELL:  He is still answering

24    the question.  He can answer the question.

25          MS. SCHUSTER:  Yes.  I understand you

Page 191

1          Q.   Did they give a description of the
2     well-dressed African-American male other than he
3     was African-American and he was well dressed?
4          A.   No.
5          Q.   How many times did you and Mr. Rankin
6     watch the video at Chapel Hill?
7          A.   I'd say half a dozen approximately.
8          Q.   How long were you there?
9          A.   Half an hour, 45 minutes.
10         Q.   What did you do when you left?
11         A.   Took Mr. Rankin back to Macedonia.
12    Then I went back to Elyria.  Well, we went back
13    to Macedonia, and then in the Macedonia store I
14    asked Mr. Rankin if he had any pictures or
15    anything of Michael Graham, and he had, I
16    forget, two or three I took back with me back to
17    the Elyria store that they had some candid
18    snapshots of the employees during the grand
19    opening.
20              Rick Sulenski had mentioned that he
21    was the closing manager I think the night before
22    or somebody told me Rick was or something to
23    that effect.  So I took the pictures back, and
24    Rick was in the store, and so I showed Rick the
25    pictures of Michael Graham and asked him if this

TIMOTHY L. COLLINS                                      June 21, 2007
Graham v. Best Buy Stores, L.P., et al.

Page 193

1          Q.   How did you know that?

2          A.   I don't remember how I knew that.  I

3     don't remember.

4          Q.   Pardon?

5          A.   I said I don't remember.

6          Q.   Well, let's go back.  When you went to

7     the Elyria store on the morning of May 10th, you

8     watched the video, you took the video, and you

9     went to Mr. Rankin's store; correct?

10         A.   Correct.

11         Q.   I haven't skipped anything; have I?

12    Well, except that you went out into the store to

13    look at the area of the cash register.  But

14    those were your activities at that time; am I

15    correct?

16         A.   Correct.  I just don't remember how I

17    found out or when I found out that Rick had

18    worked the day before or the evening before.

19         Q.   When you were in Macedonia to show the

20    video to Mr. Rankin, did you speak to anyone

21    else in Macedonia?

22         A.   No.

23         Q.   Did you make any phone calls

24    concerning this matter?

25         A.   Yes.

**TIMOTHY L. COLLINS**
Graham v. Best Buy Stores, L.P., et al.

**June 21, 2007**

Page 199

```
 1        Q.  At that point you had with you the

 2   tape and you also had three photographs; am I

 3   right?

 4        A.   Two or three.  I don't remember

 5   exactly.

 6        Q.  You should mark these 7A, B, and C.

 7                   - - - - -

 8        (Thereupon, Plaintiff's Deposition

 9   Exhibits 7A, 7B and 7C were marked for purposes

10                of identification.)

11                   - - - - -

12        Q.   I'm going to show you now what have

13   been marked as Collins Exhibits 7A, B, and C.

14   Are Exhibits 7A, B, and C the three photos which

15   you obtained at the Macedonia store of Michael

16   Graham?

17        A.   Yes.

18        Q.  By the way, when you were at the

19   Macedonia store, you asked Marc Rankin for the

20   photos or for photos, if he had any photos, of

21   Michael Graham; am I right?

22        A.   Correct.

23        Q.  Did you go with Mr. Rankin to wherever

24   he went to obtain the photos?

25        A.   Yes.
```

**TIMOTHY L. COLLINS**
Graham v. Best Buy Stores, L.P., et al.

June 21, 2007

Page 210

1        Q.   Whatever size they were, when

2    Mr. Rankin gave them to you, they were that size

3    when you gave them to the Elyria PD; correct?

4        A.   Correct.

5        Q.   When Mr. Sulenski came into the

6    security office at Elyria, what did you say to

7    him?

8        A.   I don't remember the exact verbatim

9    words, but I had the three pictures, and I said

10   do you recognize this as the individual you saw

11   in the store last evening.

12       Q.   Did you have any conversation with him

13   about whether in fact he did see an individual

14   in the store last evening?

15       A.   Yes.  I asked him if this was the

16   individual he saw in the store last evening.

17       Q.   And he didn't say I didn't see anybody

18   in the store last evening?

19       A.   No.  I don't know which picture I

20   pointed to, but he said, yes, I think I saw this

21   guy in the store last night.

22       Q.   So he pointed to one of the pictures.

23   Did you record which one he pointed to?

24       A.   Not that I remember, no.

25       Q.   He said I think I saw this guy in the

**TIMOTHY L. COLLINS**
Graham v. Best Buy Stores, L.P., et al.                    June 21, 2007

Page 213

1   think that's the guy I was talking to last

2   night?  I think that's the guy?

3       A.  I don't remember his exact words.  I

4   remember he responded to me affirmatively that

5   that was the gentleman he saw or assisted last

6   night, the evening before.

7       Q.  Did he say I think it is, or did he

8   say I'm positive it is?

9       A.  I don't recall.

10      Q.  If you made notes, you would have

11  given them to the Elyria PD; am I correct?

12      A.  Had I made a note about that, I would

13  have given that to them as well.

14      Q.  I'm going to show you now what will be

15  marked as Exhibit 8.

16                  - - - - -

17          (Thereupon, Plaintiff's Deposition

18           Exhibit 8 was marked for purposes

19                of identification.)

20                  - - - - -

21      Q.  Exhibit 8 appears to be some sort of

22  a cash register tape; am I correct?

23      A.  Yes.

24      Q.  Is it a particular cash register tape?

25      A.  Yes.

Page 265

1              A.   Why go to setup screen on 4-22?

2              Q.   12?

3              A.   Why license plates wrinkled and edges

4       coming up?

5              Q.   And 13?

6              A.   This is a question, these or some of

7       these, why license plate wrinkled and edges

8       coming up, that's when I got to -- that was

9       added after the fact before I interviewed

10      Michael Graham but after I left my office.

11      Because when I got to the store, about halfway

12      down is where this occurred.  About half, the

13      first half, occurred in my office.  The second

14      half occurred after I got to the store.

15             Q.   Down to where?

16             A.   Where it says 4-14 Drew new CP, I

17      determined that once I got into the store and I

18      was able to look up the license plates.  At the

19      bottom where it says why license plate wrinkled

20      and edges coming up, I wrote that after I got to

21      the store because I had physically seen the

22      license plates.

23             Q.   Why was that significant?

24             A.   Because he switched license plates on

25      the two.

Page 326

```
1                        CERTIFICATE

2

3    State of Ohio,         )

4                           )   SS:

5    County of Cuyahoga.  )

6

7

8

9         I, Cynthia A. Sullivan, a Notary Public
     within and for the State of Ohio, duly
10   commissioned and qualified, do hereby certify
     that the within named TIMOTHY L. COLLINS was by
11   me first duly sworn to testify to the truth, the
     whole truth and nothing but the truth in the
12   cause aforesaid; that the testimony as above set
     forth was by me reduced to stenotypy, afterwards
13   transcribed, and that the foregoing is a true
     and correct transcription of the testimony.

14
          I do further certify that this deposition
15   was taken at the time and place specified and
     was completed without adjournment; that I am not
16   a relative or attorney for either party or
     otherwise interested in the event of this
17   action.  I am not, nor is the court reporting
     firm with which I am affiliated, under a
18   contract as defined in Civil Rule 28(D).

19        IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my seal of office at Cleveland,
20   Ohio, on this 21st day of July 2007.

21

22

23
               Cynthia A. Sullivan, Notary Public
24             Within and for the State of Ohio

25   My commission expires October 17, 2011.
```