NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-4139

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

OCT 22 2008

LEONARD GREEN, Clerk

| | |
|---|---|
| MICHAEL GRAHAM, | ) |
| | ) |
| Plaintiff-Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| BEST BUY STORES, L.P., | ) |
| | ) |
| Defendant-Appellee. | ) OPINION |
| | ) |

Before: MOORE and COOK, Circuit Judges; and HOOD,[*] District Judge.

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Michael Graham ("Graham") appeals the district court's grant of summary judgment to Defendant-Appellee Best Buy Stores, L.P. ("Best Buy"). Graham, a former Best Buy employee, seeks relief in connection with his termination and events that transpired soon after. Graham appeals the dismissal of his claims of racially discriminatory termination, retaliation, wrongful discharge, abuse of process, malicious prosecution, defamation, and intentional infliction of emotional distress.

We AFFIRM the district court's grant of summary judgment.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND[1]

Graham, an African-American man, was hired by Best Buy in 1997. Over the next few years, he worked for Best Buy on and off in different states in varying positions. In 2004, a former Best Buy co-worker, Marc Rankin ("Rankin"), recruited him to work for Best Buy in Mayfield, Ohio. Graham moved to Ohio, and when Rankin became General Manager of a new Best Buy store in Macedonia, Ohio, he hired Graham as the PC Area Manager to help open the store. In February 2005, Graham "began to complain to Best Buy management and Human Resources about the disparate treatment between African-American and Caucasian employees and customers." Joint Appendix ("J.A.") at 28 (Fed. Compl. ¶ 13-14). Among other things, Graham complained that the hours of African-American employees were cut while the hours of Caucasian employees were not, that job qualifications were required of African-American job applicants but not Caucasian ones, and that Rankin tried to charge an African-American customer returning a television a restocking fee that he had not assessed against Caucasian customers.[2]

In April 2005, another manager at the Macedonia Best Buy found a computer, monitor, and partially completed purchase order set aside at the front of the store. The price listed on the purchase order showed a deduction greater than the approved employee discount. The computer was not in a box, and it had a Best Buy "license plate" attached to it. Best Buy affixes license plates to display

---

[1] Many of the facts in this case are in dispute. Because we are reviewing the grant of a motion for summary judgment, this section will describe the facts in the light most favorable to Graham. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 520 n.1 (6th Cir. 2007).

[2] Best Buy argues that Graham made only two complaints. Graham also asserts that Rankin publicly embarrassed him when Graham asked for personal leave while not doing this to a white employee, and that another employee made racist remarks about African-American customers.

2

items for identification. The purchase order indicated that the computer had been a display item. However, the computer that was found at the front of the store was not a display computer; it was new. The display computer that the license plate properly belonged to was found in the new computer's box.

When this computer and purchase order were found and connected with Graham, Tim Collins ("Collins"), the district loss-prevention manager, investigated. Graham admits that he removed the new computer from its box, put the display computer in the box, and set the new computer aside to purchase for himself. He also admits that he wrote the purchase order. However, Graham says that he was planning to buy the display computer when a co-worker told him that there was a new one in the back. He decided to buy the new computer instead, and he put the display one in the box so that it could be returned to the vendor per Best Buy policy. He says that he wrote a second purchase order, which Best Buy did not find, reflecting the proper price. He also denies switching the license plate from one computer to another.

On April 22, 2005, after confronting him with the information they had uncovered about what they viewed as an attempt to get an improper discount, Rankin and Collins terminated Graham "without any required input from Human Resources."[3] Appellant Br. at 10.

On May 9, 2005, employees at a Best Buy store in Elyria, Ohio discovered a cash shortage. Collins investigated and reviewed the security video. In the video, Collins observed an African-American man who resembled Graham appear to use a key to take money out of a cash register, something Graham (and likely any other Best Buy store employee) would have known how to do.

---

[3]Collins states that he consulted human resources, but a human resources official does not remember whether he called her.

3

After confirming his identification of the man on the video as Graham with Rankin and an employee who had been in the store on the evening of the theft, Collins reported the theft to the police and notified them that he suspected Graham.

Graham was arrested in connection with this theft on June 15, 2005, and was indicted on August 3, 2005. On May 9, 2006, after being advised that there were other suspects, the prosecutor dropped all charges against Graham. While embroiled in this criminal process, Graham pursued his civil complaints against Best Buy. After being terminated, he complained to human resources. On May 26, 2005, Graham filed charges with the Ohio Civil Rights Commission. He received a right to sue letter from the Equal Employment Opportunity Commission dated June 1, 2006.

In May 2006, Graham sued Best Buy in the Court of Common Pleas, alleging defamation and seeking punitive damages. In June 2006, Best Buy filed a notice of removal. In August 2006, Graham filed suit against Best Buy in the U.S. District Court for the Northern District of Ohio. This suit included state and federal discrimination claims; state and federal retaliation claims; claims of wrongful discharge, abuse of process, malicious prosecution, and intentional infliction of emotional distress; and sought punitive damages. On April 10, 2007, these cases were consolidated.[4]

On June 25, 2007, Best Buy filed a motion for summary judgment. On August 14, 2007, the district court issued its opinion granting summary judgment to Best Buy on all counts. Graham timely filed his notice of appeal.

---

[4]Graham's state suit was brought against two John Does in addition to Best Buy, and his federal suit was filed against three John Does as well as Best Buy. Neither party discusses these John Does, and the district court noted that they were "never served, never more fully identified, they never appeared, and they have not been a factor in this case." J.A. at 45 (Dist. Ct. Op. at 1). Having no further information about them, we will not consider the John Does.

4

## II. ANALYSIS

### A. Standard of Review

We review de novo the district court's grant of summary judgment. *Blair*, 505 F.3d at 523. Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, facts and inferences "'must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita*, 475 U.S. at 587 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B. Discrimination Claims

Graham asserts that Best Buy terminated him because of his race in violation of 42 U.S.C. § 2000e-2(a) ("Title VII").[5] Graham also raises a mixed-motive discrimination claim under 42 U.S.C. § 2000e-2(m).

#### 1. Single-Motive Claims

Single-motive claims are evaluated using the burden-shifting analysis detailed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-05 (1973). *See also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). To proceed on this race-

---

[5]The parties dispute whether Graham has appealed the dismissal of his parallel state-law claims of discrimination brought under Ohio Rev. Code § 4112.02. We have noted that the elements of a discrimination case are the same under federal Title VII law and Ohio law, so both can be considered together. *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008) ("The Ohio Supreme Court has held that federal case law interpreting Title VII . . . is generally applicable to cases alleging violations of R.C. Chapter 4112." (internal quotation marks omitted)); *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004). Graham's state-law claims survive or fail with his federal claims.

discrimination claim, Graham must establish a prima facie case of discrimination by showing that: "'(1) he . . . was a member of a protected class; (2) he . . . suffered an adverse employment action; (3) he . . . was qualified for the position; and (4) he . . . was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.'" *Wright*, 455 F.3d at 707 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). The first three elements are undisputed on appeal.[6] As to the fourth element, Graham asserts that Best Buy replaced him with a white male. Best Buy argues that Graham has no personal knowledge of this fact and has introduced no admissible evidence regarding his replacement. However, Best Buy "does not deny this fact, has submitted no evidence to refute it, and has made no statements regarding [Graham's] replacement." *Wright*, 455 F.3d at 707. In these circumstances, an employee's "assertion regarding his replacement suffices to sustain a prima facie case" on summary judgment. *Id.*

As Graham has sufficiently alleged a prima facie case, the burden shifts to Best Buy to produce a legitimate, non-discriminatory reason for Graham's termination. *McDonnell Douglas*, 411 U.S. at 802-03. Best Buy alleges that Graham was terminated for violating the store's employee-discount policy. Best Buy's Employee Handbook and its Conduct Guidelines for Managers, which Graham signed, state that violating the employee-discount policy is a serious offense which "would

---

[6]In its motion for summary judgment, Best Buy alleged that Graham could not prove that he was qualified for the job because he attempted to abuse the employee-discount process. The district court agreed with this argument. J.A. at 53-54 (Dist. Ct. Op. at 9-10). However, Best Buy contends that its nondiscriminatory reason for terminating Graham was this computer switch. As Graham properly notes, "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc). It was error for the district court to consider Best Buy's alleged nondiscriminatory reason for discharging Graham while analyzing his prima facie case. Best Buy offers no other evidence to show that Graham was unqualified, and Graham satisfies the third element of the prima facie case.

6

likely lead to termination for a first offense." J.A. at 197, 245 (Best Buy Emp. Handbook at 42; Conduct Guidelines for Managers).

Because Best Buy has asserted a legitimate nondiscriminatory reason for terminating Graham, the burden of production shifts back to Graham to produce evidence showing that this reason is pretextual. *McDonnell Douglas*, 411 U.S. at 804. We have held that "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Wright*, 455 F.3d at 708 (internal quotation marks omitted). Best Buy's investigation process need not have been perfect, but its decision must have been "reasonably informed and considered." *Id.* (internal quotation marks omitted). Best Buy does not need to prove that Graham violated or intended to violate the discount policy, only that Best Buy "made its decision to terminate [Graham] based on an honestly held belief in a nondiscriminatory reason supported by particularized facts after a reasonably thorough investigation." *Id.* at 709.

Best Buy has offered evidence that it investigated the matter and that it reasonably relied on the facts before it.[7] Graham argues that he put the display computer in the new box in order to return

---

[7]When Graham was terminated, Best Buy had the following information: (1) a computer and purchase order listing a discount that was too steep for that merchandise had been found at the front of the store; (2) the computer was new, contrary to indications on the purchase order; (3) an identification tag (the "license plate") normally attached only to display items had been affixed to this new computer; (4) this particular license plate belonged to a computer that had been on display but had been moved to this new computer; (5) the display computer that once bore this license plate was found in the box that originally belonged to the new computer; (6) Graham admitted that he had set the computer aside, that he had put the display computer in the new computer's box in order to return the display unit, that he wrote the purchase order that had been found with the computer, and that he intended to purchase the computer once Rankin approved the price. Collins interviewed employees, tested the computer to see if it was new, checked the license plate, and spoke with Graham before Graham was terminated.

7

it to the distributor per Best Buy policy, that he did not "switch" the license plate, and that the purchase order found by Best Buy was not the purchase order he had written out for the new computer, but rather one he had written when he thought he was going to be purchasing a display model. He also notes that he did not purchase the computer and that Rankin did not consult human resources before terminating him. None of this evidence, however, suffices to show that Best Buy lacked an "honestly held belief in a nondiscriminatory reason supported by particularized facts after a reasonably thorough investigation." *Id.* Under these circumstances, Graham has not made a sufficient showing that Best Buy's nondiscriminatory reason was pretextual, and summary judgment on the single-motive race-discrimination claim is proper.

### 2. Graham's Mixed-Motive Claim

Graham also raises a mixed-motive race-discrimination claim under 42 U.S.C. § 2000e-2(m). The *McDonnell Douglas* burden-shifting framework does not apply to mixed-motive claims. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 401-02 (6th Cir. 2008); *Wright*, 455 F.3d at 711-13. A mixed-motive discrimination claim survives summary judgment if "there are any genuine issues of material fact concerning [Best Buy's] motivation for its adverse employment decision." *White*, 533 F.3d at 402. This burden "is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support [Graham's] claim." *Id.* at 400.

While it is a close question, Graham's mixed-motive claims do not survive this low burden. The fact that he has established a prima facie case under the *McDonnell Douglas* framework can be considered in favor of his mixed-motive claims. *Id.* at 401. However, most of Graham's allegations regarding discrimination go to show that he did not violate the employee-discount policy rather than

8

that race was a motive in his termination. He argues that a similarly situated white employee was punished less harshly than he was. To compare his treatment with that of this white employee, Graham must show that there are no relevant differences between their conduct. *Wright*, 455 F.3d at 709-10. The other employee's separation notice makes it clear that Graham's conduct was not similar. Best Buy alleges that Graham attempted to purchase a new computer at a discount greater than that offered to employees. However, the separation notice for the other employee indicates that Best Buy warned and later fired this other employee because he was accruing Best Buy Reward Zone benefits on purchases he made, a violation of company policy. Best Buy could choose to have a policy that an employee who planned to purchase merchandise at an improperly low price should be punished more harshly than one who attempted to earn additional perks on a purchase he made with his legitimate employee discount.

The burden to establish a mixed-motive discrimination claim is not onerous, but ultimately Graham has not "produced evidence from which a jury can logically infer" that Best Buy's termination was motivated in part by race. *White*, 533 F.3d at 404. Summary judgment on this claim is proper.

## C. Retaliation Claims[8]

### 1. Retaliatory-Termination Claims

Graham appeals the grant of summary judgment on his claims of retaliatory termination in violation of 42 U.S.C. 2000e-3(a). Absent direct evidence, this claim is analyzed under the

---

[8]The parties dispute whether Graham has appealed the grant of summary judgment on his state-law retaliation claims under Ohio Rev. Code § 4112.02. These types of state and federal claims can be considered together. *Staunch*, 511 F.3d at 631; *Knox*, 375 F.3d at 457. Graham's state-law claims survive or fail with his federal claims.

9

*McDonnell Douglas* framework detailed above. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). To proceed on this claim, Graham must establish a prima facie case of retaliation by producing evidence that: "(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Graham asserts that he repeatedly complained to Rankin about discriminatory conduct toward African-Americans and that Rankin fired him shortly thereafter.[9]

Assuming that Graham has established a prima facie case, we conclude that he cannot "demonstrate by a preponderance of the evidence that the legitimate reason offered by [Best Buy] was in fact only a pretext to mask retaliation." *Id.* Best Buy asserts that Graham was terminated because he attempted to abuse the employee-discount policy. As in the discrimination context, Graham has provided no evidence that his dismissal was retaliatory and that Best Buy's proffered legitimate reason was pretextual. Summary judgment requires the nonmoving party to "set out specific facts showing a genuine issue for trial," and Graham has failed to do that. Fed. R. Civ. P. 56(e)(2).

---

[9]The district court opinion rejected Graham's retaliation claim on the grounds that he only showed a temporal link between his complaints and his termination and that such a connection is insufficient to establish a causal link. However, this court has held that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). We explained that "if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation." *Id.*

### 2. Retaliatory-Criminal-Process Claims

Graham alleges that Best Buy identified him to the police regarding the theft at the Elyria store because of his complaints about race discrimination. The same framework used in the previous section regarding retaliatory termination applies to this claim. As above, we will assume that Graham has sufficiently alleged that he engaged in protected activity and that Best Buy took adverse action against him. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-64 (2006) ("[T]he anti-retaliation provision . . . is not limited to discriminatory actions that affect the terms and conditions of employment."). Taking the facts in the light most favorable to Graham, he has shown that Rankin and Collins knew about his protected activity before he was accused of the theft. Graham has established temporal proximity between his actions and his arrest, which can satisfy the causal-connection requirement. *Mickey*, 516 F.3d at 525.

To prevail on its motion for summary judgment, Best Buy does not have to prove that Graham actually committed the alleged theft or show that its investigation was perfect; it need only show that it decided to report Graham to the police "based on an honestly held belief in a nondiscriminatory reason supported by particularized facts after a reasonably thorough investigation." *Wright*, 455 F.3d at 709. Before alerting the police, Collins reviewed the security video which showed an African-American man who appeared to know Best Buy's store procedures and to have a key to the register take the money. Collins believed that this man looked like Graham and confirmed his identification with Rankin and with an employee of the Elyria store who had been working on the day of the theft. The reasonableness of Best Buy's belief is bolstered by the fact that, based on the same evidence Best Buy had, the police arrested Graham, a grand jury indicted him, and a prosecutor decided to pursue the case. Assuming that Graham has made a prima facie case of

11

retaliation, he has not made a sufficient showing of pretext to overcome Best Buy's proffered legitimate non-discriminatory reason for reporting him to the police. Summary judgment was proper on this claim.

**D. Abuse-of-Process Claim**

In Ohio, the tort of abuse of process has three elements: "'(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.'" *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115, 116 (Ohio 1994)). An abuse-of-process claim will not survive a motion to dismiss when it is supported only by "conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions." *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999). This court has also noted that "there is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* (internal quotation marks omitted).

Graham complains that Best Buy presented no "admissible evidence of its alleged 'good faith.'" Appellant Br. at 46. Graham, however, bears the burden of responding to a properly supported motion for summary judgment. Fed. R. Civ. P. 56(e)(2). Best Buy presented evidence that Collins reported Graham to the police because Collins believed that Graham had committed the theft. Graham has offered no facts in support of the proposition that Best Buy acted with an ulterior motive. Additionally, he presents no evidence that Best Buy did anything beyond "carry[ing] out the process to its authorized conclusion." *Hahn*, 190 F.3d at 718.

E. Malicious-Prosecution Claims

In Ohio, the elements of the tort of malicious criminal prosecution are: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990); *see also Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008). Malice is defined as "an improper purpose or any purpose, other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio 1990); *see also Harris*, 513 F.3d at 521. However, "if the lack of probable cause is demonstrated, the legal inference may be drawn that the proceedings were actuated by malice." *Thacker v. City of Columbus*, 328 F.3d 244, 260-61 (6th Cir. 2003) (internal quotation marks omitted). Probable cause for this purpose is defined as "'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he [or she] is charged.'" *Harris*, 513 F.3d at 520 (quoting *Rogers v. Barbera*, 164 N.E.2d 162, 166 (Ohio 1960)).

For purposes of an Ohio malicious-prosecution claim, "'[a]n indictment . . . is *prima facie* evidence of probable cause and a plaintiff must bring forward substantial evidence to rebut this.'"[10] *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005) (quoting *Carlton v. Davisson*, 662 N.E.2d 1112, 1121 (Ohio Ct. App. 1995)). A plaintiff can rebut an indictment by showing that "'the return

---

[10]Graham cites cases dealing with Fourth Amendment claims of unlawful seizure which note that in that context there has been no holding that "a *subsequent* grand jury indictment can establish probable cause for an earlier arrest." Appellant Br. at 48; *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005). These case are distinguishable because they apply to a constitutional claim brought against law-enforcement officers rather than to a tort claim brought against private actors.

13

of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular.'" *Id.* (quoting *Deoma v. Shaker Heights*, 587 N.E.2d 425, 428 (Ohio Ct. App. 1990)). Graham has presented no evidence to rebut the presumption that his indictment demonstrates probable cause. He argues that Best Buy's investigation was flawed and that this was the only evidence presented in the grand jury, but he does not allege perjury or significant irregularities in the grand jury. In addition to the indictment, the prosecutor assigned to Graham's case stated that he only pursues cases where he feels he can "sustain a conviction beyond a reasonable doubt," a higher standard than probable cause, and that once he felt that standard was not met in Graham's case, he dismissed the charges. J.A. at 414-15 (Gauthier Dep. at 40-43). Because Graham cannot establish that he was prosecuted without probable cause, Graham cannot prevail on his malicious-prosecution claims.

**F. Defamation Claim**

Graham alleges that Best Buy defamed him when it identified him to the police as the perpetrator of the alleged theft. In Ohio, the elements of defamation are: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d at 522 (internal quotation marks omitted). Assuming that Graham has established each of these elements, summary judgment is proper because Graham cannot overcome Best Buy's qualified privilege.

Ohio law provides qualified privilege[11] for disclosures when:

> circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or [where] the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do.

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1290 (Ohio 1995); *see also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 313 (6th Cir. 2000). The Ohio Supreme Court held that qualified privilege shields individuals who report information about public-work contracts to government officials. *A & B-Abell Elevator*, 651 N.E.2d at 1291. It is in society's interest that people reporting crimes to the police be similarly protected. Best Buy disclosed Graham's name to the police so that investigation could be conducted, and Best Buy is entitled to qualified privilege. *See id.* at 1291-92.

To overcome qualified privilege, Graham must show that Best Buy acted with actual malice, or "knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* at 1292 (internal quotation marks omitted). Graham offers nothing to show actual malice. Best Buy's investigation may not have been perfect, but Graham presents no question of material fact suggesting that Best Buy reported him with actual malice. Accordingly, summary judgment on his defamation claim is proper.

---

[11]The district court held that Best Buy was entitled to absolute privilege for its disclosures, but on appeal Best Buy argues that it had qualified privilege. Also, Graham cannot defeat a claim of qualified privilege, so the intricacies of which type of privilege applies here need not be explored.

### G. Claim of Intentional Infliction of Emotional Distress

To survive summary judgment on his claim of intentional infliction of emotional distress, Graham must show that: "(1) [Best Buy] intended to cause emotional distress, or knew or should have known that their actions would result in [Graham's] serious emotional distress, (2) [Best Buy's] conduct was extreme and outrageous, (3) [Best Buy's] actions proximately caused [Graham's] emotional injury, and (4) [Graham] suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The Ohio Supreme Court adopted the language from the *Restatement of the Law 2d, Torts* (1965) which states that the defendant must act with more than criminal intent, and that to be liable for this tort, the defendant's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters of America*, 453 N.E.2d 666, 671 (Ohio 1983) (internal quotation marks omitted), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007).

The differences between the case Graham cites to support his assertion that Best Buy's conduct was "outrageous" and his own highlight the fact that Graham has not made a sufficient showing to prevail on this claim. In *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1082 (Ohio 1991), the Ohio Supreme Court found a jury determination of outrageous conduct warranted where an employer ordered an employee to perform certain acts, led him to believe these acts were legal, then fired him in a way meant to suggest that he was responsible for these acts, and sought to make him the target of a federal investigation into these acts. Graham relies on allegations of conduct that do not approach this level of bad faith. Graham has also failed to allege sufficient facts to allow a jury to

16

find that he suffered severe emotional distress or damage. Summary judgment on Graham's claim of intentional infliction of emotional distress is proper.

### III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's judgment.